IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DANIEL RAY BROWN                                                              PLAINTIFF

      v.                              Civil No. 13-3049

SHERIFF MIKE MOORE; JAIL
ADMINISTRATOR JASON DAY;
and JAILER BOBBY ENGLES                                                  DEFENDANTS

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*.

The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Boone County Detention Center (BCDC). He maintains his constitutional rights were violated in the following ways: (1) excessive force was used against him by Defendant Engles on April 4, 2013; (2) the jailers drew their tasers and pepper spray without cause to intimidate and instill fear; (3) the Defendants retaliated against him for submitting grievances and filing civil rights lawsuits; (4) he was forced to sleep on the floor with his head only two feet from the toilet for four nights; and (5) the inmates were not properly classified and separated. In his summary judgment response, Plaintiff concedes that claims four and five by themselves are "most likely" not civil rights violations by themselves. (Doc. 54 at ¶ 3(A)). However, he states these actions were retaliatory. *Id.*

The case is before me on a motion for partial summary judgment (Doc. 32) filed by the Defendants. The motion does not cover the alleged use of excessive physical force against him

-1-

by Jailer Bobby Engles on April 4th. Plaintiff has filed a response (Doc. 54). The motion is now ready for decision.

### 1. Background

Plaintiff was incarcerated at the BCDC from August 31, 2012, through August 16, 2013. *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1. He was again incarcerated there from August 27, 2013, until September 11, 2013. *Id.* During the initial incarceration, he was a pretrial detainee. *Id.* at ¶ 2.

On either April 4, 2013,[1] at approximately 2:00 p.m., Plaintiff was taken out of B-pod. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) A at ¶ 4; *Resp.* at ¶¶ 4(A), 7, 8(B). According to Day, the move was made after a disturbance inside B-pod. *Defts' Ex.* A at ¶ 4.

From Engles' incident report, it appears Plaintiff was initially put in HC-1 for a short period of time. *Plaintiff's Exhibits* (hereinafter *Plff's Ex.*) at pgs. 7 & 25.[2] Plaintiff indicates at he was moved out of HC-1 at approximately 6:00 p.m. *Id.* at pg. 25.

Plaintiff was moved into to protective custody in G-pod.[3] *Resp.* at ¶¶ 4(B) & (C). G-pod consists of two cells that are connected to a day-room for use by detainees. *Defts' Ex.* A at ¶ 5; *Resp.* at ¶ 4(G).

When Engles came into B-pod, Plaintiff states he "grabbed me by the collar and banged my head on the concrete at least three times if not more." *Resp.* at ¶ 5(D). Plaintiff asserts that Engles then walked him out of B-10, turned him around, and threw him into the door of B-9.

---

[1] This date is referred to as April 3rd in some of the documents submitted to the Court. However, the incident report is dated April 4th and Plaintiff maintains the correct date is April 4th. I will therefore use that date through out this document.

[2] Plaintiff did not separately label his exhibits. Instead, he has attached fifty-five pages of material to his response. The material is listed on the docket sheet as Doc. 54-1.

[3] Plaintiff submitted an inmate placement history. The history does not show his transfer to HC-1 or to G-pod. *Plff's Ex.* at pgs. 44-46.

*Id.* Plaintiff indicates that he was still recovering from the long lasting effects of concussion when this occurred. *Id.* As a result of Engles' conduct, Plaintiff states his memory was affected; he was bruised; and he had bumps. *Id.* at ¶¶ 5(D) & 6(D). Plaintiff maintains he was denied medical attention. *Id.* at ¶ 6(D).

According to the Plaintiff, Engles drew his taser and pointed it at inmate Austin Barber and the Plaintiff. *Resp.* at ¶ 5(B). Plaintiff also asserts that Engles "red dotted" him with his taser and kept poking him with it. *Id.* at ¶ 5(A). Plaintiff was asked to explain what red dotting meant. He said: "[a] red dot laser travels from the taser and marks a target for accuracy in deployment." *Id.* at ¶ 5(B).

When Engles made a second entrance into B-pod, Plaintiff states he was pointing the laser through a locked door. *Resp.* at ¶ 5(B). Plaintiff asserts that Engles asked Sergeant Silva if he could taser the Plaintiff. *Id.* Engles did not deploy the taser. *Id.* at ¶ 5(C).

According to Day, he was present at the door of B-pod when Plaintiff was being escorted out. *Defts' Ex.* A at ¶ 7. Day did not observe any marks, bruising, or any use of force by Engles. *Id.*

Plaintiff maintains he was moved out of B-pod in retaliation for saying he was going to sue both Engles and Day, filing civil actions, and filing grievances. *Resp.* at ¶¶ 4(F) & 6(G). He asserts that Defendants have denied there was any disturbance and he committed no rule infraction. *Id.* at ¶ 4(F). Plaintiff maintains that Day retaliated against him by not investigating his claim of excessive force. *Id.* at ¶ 8(A). Plaintiff states he told Day he was filing a lawsuit, wanted the tape reviewed and preserved, wanted charges to be pressed against Engles, and wanted him disciplined. *Id.* at ¶ 8(B). Plaintiff asserts that Day destroyed the tape. *Id.*

Defendants indicate no video or audio recording was preserved because there was no "incident" where force was used. *Plff's Ex.* at pg. 38.

According to Plaintiff, he was given the choice of going to C-pod, where he believed he was going to be beaten, or to be moved in a single cell with Lance Seaman, a mentally disturbed inmate. *Resp.* at ¶¶ 4(F) & 7. Plaintiff asserts that Seaman did not shower, talked to himself, talked to Satan, masturbated openly, and acted out. *Id.* at ¶¶ 4(H), 6(B) & 6(F). According to Plaintiff, Seaman was moved to G-pod to separate him from other inmates. *Id.* at ¶ 4(H).

Plaintiff had to sleep on the floor four nights. *Resp.* at ¶ 6(D). He did have a mat. *Id.* Other than these four nights in G-pod, Plaintiff had a bunk every night. *Id.* at ¶ 6(E).

On April 4, 2013, Plaintiff submitted a grievance stating there was no floor space in the cell, that Seaman had fallen twice, and that Lance was a mental patient. *Resp.* at ¶ 6(A).

Plaintiff maintains that B-pod is the main protective custody pod and is used to house sexual offenders who are segregated because of their charges. *Resp.* at ¶ 4(B). He indicates he had been in B-pod since September 27, 2012. *Id.* He was moved there after an altercation with another inmate. *Id.* He requested protective custody in September of 2012.

Engles' April 4th incident report provides as follows:

At approx. 1350 [1:50 p.m.] haircuts had been finished in B-pod. I instructed B top tier to lockdown. They did not follow my instructions. I then instructed them two more times and they continued to stay in the day room area. At approx. 1355 [1:55 p.m.] I called Ofc. Wood and asked her to have Sgt. Silva or Cpl. Avery to come back and relieve me from pod control so I could speak with B-pod. At approx. 1358 [1:58 p.m.] Sgt. Silva relieved me from pod control. I entered into B-Pod. I then calmly instructed top tier to go upstairs and bottom tier to lock down. Bottom tier began to lock down in their cells and top tier still did not move. I then instructed them with a louder tone. Top tier then followed my instruction and began to go upstairs. I then stated the rules and procedures of our lock down times for each tier. I then informed them they were locked down for two days. I then exited the pod at approx 1405 [2:05 p.m.]. At approx. 1406

AO72A
(Rev. 8/82)

> [2:06 p.m.] detainee (Brown, Daniel) came over the intercom complaining about the lock down. I then re-entered B-Pod and he began to yell at me from his cell about being locked down. I instructed him to calm down and I would speak to him. He refused and continued to yell through the cell door. I then stated to him that if he wanted he could fill out a grievance form about his complaint but he needed to quit yelling cause he was causing a disturbance in the pod. He then yelled I am going to sue you. I informed him to get on the ground cause I was opening the cell door to speak to him. He refused and continued to yell at me. I then instructed him that if he was standing when the door opened he would be tazed. He continued to yell and scream. Sgt. Silva began to open the cell door and I took my tazer out. As the door began to open he dropped to his knees and placed his hands behind his back. At approx. 1408 [2:08 p.m.] Sgt. Silva and I began to escort him up to booking and the detainee continued to yell and threaten me with a lawsuit. At approx. 1409 [2:09 p.m.] we placed him in HC-1 and I calmly instructed him to calm down and quit yelling. Then we exited the holding cell.

*Plff's Ex.* at pg. 7.

On April 8th, Plaintiff asked to be removed from G-pod. *Resp.* at ¶ 4(D). He was put back into B-pod. *Id.* at ¶ 4(E).

Plaintiff filed several lawsuits while incarcerated in the BCDC. *Resp.* at ¶ 6(I). He also submitted a number of grievances. *Id.* at ¶ 6(J).

With respect to Sheriff Moore, Plaintiff asserts that he submitted grievances and letters and in one document told Sheriff Moore that he had been injured. *Resp.* at ¶ 9. Plaintiff maintains Sheriff Moore had a duty to investigate and did not. *Id.*

Plaintiff has submitted the BCDC's policy regarding taser deployment and discharge. *Plaintiff's Exhibits* (Doc. 54-1) at pgs. 1-3. The policy provides that "Taser deployment may be used in any situation where verbal commands are not effective in controlling a subject." *Id.* at pg. 2. Any deployment is to be reported and verified. *Id.* at pg. 3.

Plaintiff has also provided the Court with the BCDC's use of force policy. *Plff's Exs.* at pgs. 4-6. All uses of force require the preparation of incident reports. *Id.* at pg. 6.

Plaintiff has provided the Court with unsworn statements from Josh Rips, Timothy M. Partin, Austin Barber, Matt Stangl, and Eddie Scales about the April 4th incident. Unfortunately, the Court cannot consider these statements. Unsworn statements are hearsay and cannot be considered in connection with a summary judgment motion. *See Mays v. Rhodes*, 244 F.3d 644, 648 (8th Cir. 2001).

### 2. Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Defendants contend they are entitled to summary judgment on all claims except the claim that Engles used excessive physical force against Plaintiff on April 4th. First, Defendants maintain that the mere pointing of the taser does not constitute the excessive use of force. Second, Defendants contend there no proof that BCDC employees drew their tasers or pepper spray without cause to intimidate and instill fear. Third, they maintain that Plaintiff's broad allegations of retaliation are insufficient to state a claim. Moreover, they contend Plaintiff cannot claim that any adverse action chilled him from engaging in protective activity. Fourth, Defendants contend the physical injury requirement of the Prison Litigation Reform Act (PLRA) bars the recovery of compensatory damages with respect to the retaliation claim. Fifth, Defendants maintain there is no constitutional right to an investigation. Sixth, they argue Sheriff Moore was not personally involved in any of the incidents and cannot be held liable. Finally, Defendants Day and Engles contend they are entitled to qualified immunity.

*Excessive Use of Force--Pointing of a Taser*[4]

In this case, Plaintiff was a pretrial detainee when the alleged excessive force was used. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the

---

[4] Plaintiff brought the same claim against a different officers in *Brown v. Boone County, et al.,* Civil No. 13-3065. I draw liberally from the discussion in that case.

> Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

In general, the use of force is "justified when there was a concern for the safety of the institution, the jailers, and the inmates." *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993). In the context of the use of tasers, the Eighth Circuit has held the "prisoners have a clearly established right to be free from a Taser shock or its equivalent in the absence of a security threat." *Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009). "Tasers fire metal probes into the skin, penetrating up to half an inch. Connected by wires to the taser, the probes can deliver a 50,000 volt shock that lasts up to five seconds and causes electrical muscular disruption." *McKenney v. Harrison*, 635 F.3d 354, 362 (8th Cir. 2011)(citations omitted). The Eighth Circuit noted that "a stun gun inflicts a painful and frightening blow, which temporarily

paralyzes the large muscles of the body, rendering the victim helpless." *Hickey*, 12 F.3d at 757. The use of a taser to ensure compliance with housekeeping regulations is not constitutionally permissible. *Id.* at 759.

"Just as officers may use guns only against suspects posing a threat of serious physical harm, the use of tasers requires sufficient justification for their use to be reasonable." *McKenney*, 635 at 364; *see also Jasper v. Thalacker*, 999 F.2d 353 (8th Cir. 1993)(The Eighth Circuit has held that the use of a stun gun to subdue a prisoner who had verbally threatened and then lunged at a prison official did not constitute the use of excessive force); *King v. Shoar*, No. 3:06-cv-61, 2007 WL 2066171 (M.D. Fla. July 13, 2007)("While the use of a taser is not per se excessive force, . . . it may be unnecessary, and therefore unreasonable, for an officer to use force if a suspect if already secured).

Here, Engles did not deploy his taser. Instead, he merely took it out of the holster and according to Plaintiff pointed it at him and red dotted him. In *Parker v. Asher*, 701 F. Supp. 192 (D. Nev. 1988), the Court held that threatening to deploy a taser could constitute excessive force. In *Parker,* the court recognized that the use of taser guns was not "unconstitutional when used to enforce compliance with an order that had a reasonable security purpose." *Id.* at 194 (internal quotation marks and citation omitted). However, it noted that "taser guns should not be used for the sole purpose of punishment or the infliction of pain." *Id.*

Similarly, the court in *Oliver v. Noll*, 2012 WL 2055033, *2 (N.D. Cal. June 5, 2012), stated that a "threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so does

state a cognizable claim under the Eighth Amendment." *See also Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995)(drawing a gun and pointing it at a prisoner without any indication that he intended or attempted to fire the gun, did not rise to the level of a constitutional violation); *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986)(drawing gun and terrorizing prisoner with threats of death while using racially offensive language states a claim under the First Amendment, the Due Process Clause, and the Equal Protection Clause).

Here, Plaintiff was arguing with Engles and refusing to obey his orders. Engles merely drew the taser and, viewing the facts in the light most favorable to the Plaintiff, pointed the taser at Plaintiff. The threatened use of a taser or the use of a taser to ensure compliance has been upheld as constitutional. *See e.g., Michenfelder v. Sumner*, 860 F.2d 328, 334-36 (9th Cir. 1998)(upholding threatened use of a taser to ensure compliance). As a matter of law, there is no genuine issue of material fact as to whether Engles actions in drawing his taser violated the Eighth Amendment. *See e.g. Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995)(act of drawing a gun and pointing it at the plaintiff, without any indication of intention to, or attempted, use did not state a claim); *Salvodon v. Ricotta*, 2013 WL 3816728 (E.D.N.Y. July 22, 2013)(No claim stated based on threatened use of taser alone); *McDaniel v. Yearwood*, 2012 WL 526078, *27 (D. Nev. Feb. 16, 2012)(the threatened use of a taser could constitute excessive force but only when the threat was made for the "malicious purpose of inflicting gratuitous fear"); *Noe v. West Virginia*, 2010 WL 3025561 (N.D. W. Va. July 29, 2010)(merely pointing a taser cannot support a claim for excessive force); *Policky v. City of Seward, Nebraska*, 433 F. Supp. 2d 1013, 1025 (D. Neb. 2006)("If the act of drawing and pointing a gun loaded with bullets does not violate the

Fourth Amendment, then the act of drawing and pointing a gun charged with electricity can hardly give rise to a claim of excessive force'). Defendants are entitled to summary judgment on this claim.

### *Drawing Tasers and Pepper Spray Without Cause*

For the reasons stated above, the drawing of tasers and pepper spray does not rise to the level of a constitutional violation. Plaintiff points to only three other incidents when tasers and/or pepper spray were drawn on inmates--January 2013, Roger Petty; January 2013, Ricky Mathis; and May 14, 2013, Chris Shelton. This falls far short of establishing a policy, custom, or practice of using the taser and/or pepper spray to intimidate or inflict gratuitous fear. Defendants are entitled to summary judgment on this claim.

### *Retaliation*

In *L.L. Nelson Entrs., Inc. v. City of St. Louis, Mo.*, 673 F.3d 799, 807-08 (8th Cir. 2012) the court stated that:

> [t]o establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that [he] engaged in a protected activity, (2) that the defendants responded with adverse action that would chill a person of ordinary firmness from continuing the activity, and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.

*Id*. (internal quotation marks and citations omitted). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for the exercise of a constitutionally protected activity." *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013)(internal quotation marks and citation omitted).

-11-

"In brief, the plaintiff must show the official took the adverse action because the plaintiff engaged in protected speech." *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004). The filing of grievances and the filing of lawsuits are protected First Amendment activity. *Haynes v. Stephenson,* 588 F.3d 1152, 1155-56 (8th Cir. 2009).

With respect to the first prong, it is undisputed that Plaintiff submitted a number of grievances, requested that the state police investigate the incident with Engles, and filed civil several rights cases. Clearly, Plaintiff engaged in protected activity.

With respect to the second prong, Plaintiff has sworn under penalty of perjury that the following conduct constituted retaliation: the threatened use of the taser; the use of physical force; the move from B-pod to G-pod; his placement in a cell with Seamon; his having to sleep on the floor for four nights; Day's failure to investigate, discipline, or charge Engles; and the failure to preserve the video and/or audio of the April incident.

"Adverse actions which may show retaliation include denial of privileges, worsening of an inmate's working conditions," the removal from a trustee program, and an internal transfer *Spencer*, 738 F.3d at 911. This list, of course, is not exclusive. The mere use of insulting or disrespectful comments or of a hostile manner do not generally constitute an adverse action. *See e.g., Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999).

"The key question is whether the actions were taken in retaliation for engaging in protected activity." *Id.* The actions identified by Plaintiff as retaliatory could constitute adverse actions.

Defendants argue that even if the identified actions are considered adverse actions, Plaintiff was not "chilled" by any of their alleged actions. However, the question is not whether the Plaintiff was in fact "chilled;" rather, the question is whether the adverse actions would chill a person of ordinary firmness. *See e.g., Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)("Davis' repeated efforts to surmount Terbush's alleged barriers to timely filing could be construed as efforts beyond what is reasonably expected of an inmate with ordinary firmness")(internal quotation marks and citation omitted); *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001)("The focus, of course, is upon whether a *person of ordinary firmness* would be chilled, rather than whether the particular plaintiff is chilled"); *Pena v. Greffet*, 922 F. Supp. 2d 1187, 1223 (D.N.M. 2013)(chilling effect focus is on whether a person of ordinary firmness would be chilled not whether the Plaintiff was chilled).

With respect to the third prong, Plaintiff must establish that the adverse action was causally related to the protected expression. I believe that the Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether the identified actions were taken in response to his protected activity. Defendants are not entitled to summary judgment on the retaliation claim.

### *Physical Injury Requirement of the PLRA*

Defendants maintain Plaintiff's damages on the retaliation claim are limited to nominal damages. Codified as 42 U.S.C. § 1997e(e), section 803(d) of the PLRA provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other

correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

The provision limits the available damages in the absence of a physical injury but does not preclude a Plaintiff from pursuing a claim. *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004)(The physical injury requirement of the PLRA "limit[ed] recovery for mental or emotional injury in all federal actions brought by prisoners" but does not bar the recovery of nominal and punitive damages). Here, Plaintiff brings both an excessive force claim and a retaliation claim based on the same conduct. I cannot at this stage conclude that Plaintiff is entitled to no compensatory damages on the retaliation claim.

### *Right to an Investigation*

Defendants maintain there is no constitutional right to an investigation. However, Plaintiff is not asserting the failure to investigate as a separate claim. Instead, he has alleged that the failure to investigate was in retaliation for his protected conduct. Thus, it is unnecessary to determine if there is a constitutional right to some type of investigation following an allegation of the use of excessive force.

### *Personal Involvement Requirement*

Defendants maintain that Sheriff Moore is entitled to summary judgment in his favor because there was no personal involvement on his part. I agree.

Liability under § 1983 requires some personal or direct involvement in the alleged unconstitutional action. *See e.g., Ripson v. Alles*, 21 F.3d 805, 808-09 (8th Cir. 1994). A supervisory employee may not be held liable merely because he has general supervisory authority

-14-

over a department or a given person. *See e.g., Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). "Supervisors can, however, incur liability for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012)(internal quotation marks and citation omitted). In this case, Plaintiff has made only conclusory allegations about Sheriff Moore's involvement. Nothing submitted to the Court indicates Sheriff Moore was involved in anyway. He is entitled to dismissal from this case.

Similarly, Defendants maintain that Day had no personal involvement in the alleged use of excessive force by Engles. I agree.

### *Qualified Immunity*

Defendants maintain that Day and Engles are entitled to qualified immunity on the retaliation claim. I disagree.

"Qualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeiffer*, 262 F.3d 847, 849 (8th Cir. 2001)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)(*quoting, Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). The inquiry is normally one of pure law. *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir. 1989).

In order to overcome claims of qualified immunity, Plaintiff must show that his constitutional rights were clearly established. A right is clearly established if its contours are sufficiently clear that a reasonable official would have fair warning of the type of action that would violate that right.

"[I]t has for over twenty years been the law of this circuit that actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983." *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010). Day and Engles are not entitled to qualified immunity.

### 4. Conclusion

For the reasons stated, I recommend that Defendants' partial motion for summary judgment (Doc. 32) be granted in part and denied in part. Specifically, I recommend that it be granted with respect to: (1) the claim that Engles used excessive force when drawing and pointing the taser at the Plaintiff; (2) the claim that BCDC personnel used their tasers and pepper spray without cause to intimidate and instill fear; and (3) all claims asserted against Sheriff Moore. The motion should be denied with respect to the retaliation claims against Engles and Day and their claim for qualified immunity. This leaves to claims for later resolution: (1) the claim Engles' used excessive physical force on Plaintiff on April 4, 2013; and (2) the claim that Engles and Day retaliated against the Plaintiff.

I note that this is a non-consent case with a jury demand. After the Honorable Timothy L. Brooks either adopts or rejects, in whole or in part .this recommendation, the case will be ready to be scheduled for a jury trial before Judge Brooks.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of July 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE