IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DANIEL RAY BROWN                 PLAINTIFF

v.          Case No. 5:13-CV-03049

SHERIFF MIKE MOORE;
ADMINISTRATOR JASON DAY;
and JAILER BOBBY ENGLES              DEFENDANTS

## OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R & R") (Doc. 56) of the Honorable James R. Marschewski, Chief United States Magistrate for the Western District of Arkansas, filed in this case on July 29, 2014, regarding Defendants Sheriff Mike Moore, Administrator Jason Day, and Jailer Bobby Engles' Motion for Partial Summary Judgment (Doc. 32) and supporting documents (Docs. 33 and 34); and Brown's Response to the Motion for Summary Judgment (Doc. 54). Also before the Court are Plaintiff Daniel Ray Brown's Objections (Doc. 57). The Court has conducted a *de novo* review as to all specified proposed findings and recommendations to which Brown has raised objections. 28 U.S.C. § 636(b)(1). Accordingly, the Court finds that the R & R should be, and hereby is, APPROVED and ADOPTED.

## I. BACKGROUND

While incarcerated at Boone County Detention Center ("BCDC"), Brown maintains that his constitutional rights were violated because: (1) Engles used excessive force against him on April 4, 2013 when he allegedly drew a taser on Brown and knocked his head against the cement floor and cell door; (2) jailers drew tasers and pepper spray

without cause in order to intimidate inmates; (3) Defendants retaliated against him for submitting grievances and filing civil rights lawsuits against them; (4) Brown was forced to sleep on the floor with his head two feet from the toilet for four nights; (5) and inmates were not properly classified and separated. In his Response to Summary Judgment, Brown concedes that claims four and five are most likely not civil rights violations. At this juncture, Defendants do not seek dismissal of the use of excessive force claim regarding the allegation that Engles knocked Brown's head against the floor and cell door.

The Court adopts the facts as set forth in the R & R, but finds it necessary to clarify that a factual dispute exists as to whether Brown refused to obey orders when Engles allegedly drew his taser and aimed it at Brown. Brown denies that he created a disturbance or argued with Engles, and provides unsworn statements of other inmates present in the pod in support of his claim that Engles drew his taser, and then aimed the taser, such that the laser sight appeared on Brown as a red dot. By contrast, the incident report submitted by Engles and his fellow officers indicates that Engles returned to Brown's cell after he complained over the intercom about lock-down procedures, and he merely drew his taser upon entering Brown's cell because he refused to drop to the floor as ordered. Both the incident report and the statements provided by Brown, however, are unsworn statements that cannot be used as evidence.

The Magistrate recommends that: (1) Defendants are entitled to summary judgment in their favor as to the threatened use of the taser because there is no genuine issue of material fact as to whether Engles' actions in drawing his taser violated the Eighth Amendment; (2) Brown fails to establish that Defendants had a policy, custom, or practice of using a taser and/or pepper spray to intimidate inmates and inflict gratuitous fear; and

(3) Moore has no personal involvement in the alleged unconstitutional violation and should be dismissed from suit. However, the Magistrate opined that Defendants are not entitled to summary judgment regarding Brown's retaliation claim against Day and Engles, and suggested that Brown may be entitled to compensatory damages as to his retaliation claim.

While it is somewhat difficult to surmise Brown's objections from his general grievances against Defendants concerning his treatment while incarcerated at the BCDC, Brown offers three actual objections to the Magistrate's recommendation.[1] First, he contends that Moore is not entitled to summary judgment in his favor because he failed to investigate Brown's claim of excessive force, was aware that Engles committed a crime, and knew that Day destroyed evidence by not producing video footage of the incident. Second, Brown alleges that he was neither arguing with Engles nor refusing to obey orders, and that Engles' actions when he drew the taser and threatened to deploy it by "red-dotting" him, constituted cruel and unusual punishment. Third, Brown objects to the perceived dismissal by the Magistrate of his compensatory claims, and contends he is entitled to compensatory damages when Engles allegedly knocked Brown's head into the

---

[1] Brown objects to the Magistrate's denial on his Motion to Amend his Complaint to add denial of medical treatment. As noted by the Magistrate, Brown failed to exhaust his administrative remedies. Brown also objects to issues surrounding the excessive force claim against Engles, which is not the subject of this Motion for Partial Summary Judgment. Brown lastly asks the Court to consider motions in a separate case, which will not be considered here, as these are not before the Court in the instant case.

concrete floor and cell door.[2] Brown does not offer objections to the Magistrate's other findings, nor do Defendants object to any portion of the R & R.

## II. ANALYSIS

### A. Whether Moore is Entitled to Summary Judgment

Brown objects to the dismissal of Moore, asserting that Moore knew that "a crime was committed by Defendant [Engles] and quite possibly also with Defendant Day who purposefully destroyed evidence." (Doc. 57, p.2). To obtain relief under 42 U.S.C. § 1983, "a plaintiff must prove (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *McDonald v. City of Saint Paul,* 679 F.3d 698, 704 (8th Cir. 2012) (quoting *Shrum ex rel Kelly v. Kluck,* 249 F.3d 773, 777 (8th Cir. 2001) (citation omitted)).

Section 1983 liability is personal, and to obtain relief, Brown must plead that a government official has personally violated his constitutional rights. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009); *Doran v. Eckold,* 409 F.3d 958, 965 (8th Cir. 2006) (en banc), *cert. denied,* 546 U.S. 1032 (2005). In other words, Brown must establish that Moore was personally involved in, or directly responsible for, the alleged excessive force or destruction of evidence, or that Moore was deliberately indifferent to Brown's plight. *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995). "Personal involvement can be demonstrated with evidence that the officer personally directed the alleged wrongs or had actual knowledge and

---

[2]The Magistrate did not decide whether Brown is entitled to compensatory damages as this excessive force claim is not before the Court on Defendants' Motion. Further, the Magistrate declined to determine whether Brown was entitled to damages for his retaliation claims because these are connected to the excessive force claims. Therefore, this objection is moot and will not be addressed by the Court.

acquiescence of the wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). *See Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) ("To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

Even if the Court found a § 1983 violation, prison supervisors cannot be held liable under § 1983 on a theory of *respondeat superior. Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012) *cert. denied,* 133 S.Ct. 865 (2013) (internal quotation omitted). *See Ouzts v. Cummins,* 825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.").

Brown has made only conclusory allegations regarding Moore's involvement in the threatened tasing, use of excessive force, or any destruction of evidence. Brown provides a number of grievances submitted to Moore, but reviewed by Day or other officers. Nothing in the Complaint or the materials attached thereto allege or evince personal involvement on his part. Therefore, Brown's first objection is overruled and Moore is dismissed from this lawsuit.

### B. Use of Excessive Force with the Taser

Although it is undisputed that the taser was not deployed, Brown objects to the Magistrate's finding that no reasonable juror could find that Engles' actions in drawing the taser and pointing it at him without justification constitute excessive force.

When analyzing excessive force claims of pretrial detainees, courts apply an "objective reasonableness" standard. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

> The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose or those that are rationally related but are excessive in light of their purpose.

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048-49 (8th Cir. 1989).

Whether there has been excessive force is determined under a totality of the circumstances analysis. The Supreme Court has said that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Although the Eighth Circuit has found that "prisoners have a clearly established right to be free from a Taser shock or its equivalent in the absence of a security threat," *Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009), it appears that this circuit has not decided whether merely pointing a taser at someone constitutes excessive force. By analogy, however, drawing and pointing a gun at a prisoner, without any indication that the officer intended or attempted to fire the gun, does not rise to the level of a constitutional violation. *Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995). Thus, if "the act of drawing

and pointing a gun loaded with bullets does not violate the Fourth Amendment, then the act of drawing and pointing a gun charged with electricity can hardly give rise to a claim of excessive force." *Policky v. City of Seward, Nebraska*, 433 F. Supp. 2d 1013, 1025 (D. Neb. 2006).

Courts in other jurisdictions have found that the threatened use of a taser does not support a claim of excessive force. *See Salvodon v. Ricotta*, 2013 WL 3816728 (E.D.N.Y. July 22, 2013) (no claim stated based on threatened use of taser alone); *Noe v. West Virginia*, 2010 WL 3025561 (N.D. W.Va. July 29, 2010) (merely pointing a taser cannot support a claim for excessive force).

On the other hand, some courts have suggested that even benign use of a taser must serve a purpose beyond simply inflicting gratuitous fear. *See McDaniel v. Yearwood*, 2012 WL 526078, *27 (D. Nev. Feb. 16, 2012) (the threatened use of a taser could constitute excessive force but only when the threat was made for the "malicious purpose of inflicting gratuitous fear"); and *Parker v. Asher*, 701 F. Supp. 192 (D. Nev. 1988) (Eighth Amendment claim not valid "merely by alleging that a correctional officer threatened to harm [the prisoner because] . . . . [c]orrectional officers often must use threats to enforce security and discipline. . . . [However,] guards cannot aim their taser guns at inmates for the malicious purpose of inflicting gratuitous fear.").

The Magistrate proceeds on the premise that Brown was arguing with Engles when he drew his taser. However, Brown denies that he created a disturbance or argued with Engles, and contends that Engles' use of the taser was unjustified and used in retaliation for filing grievances.

Assuming arguendo that a § 1983 violation has occurred, Moore is entitled to qualified immunity if he can prove that his "conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeiffer*, 262 F.3d 847, 849 (8th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to overcome qualified immunity, Brown must present sufficient facts to show not only that Engles' conduct violated a constitutional right, but also that the right was clearly established at the time of the alleged violation. *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014). To meet his burden of showing the right at issue was clearly established, Brown must point to cases of controlling authority in this jurisdiction at the time of the incident or to "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Payne v. Britten*, 749 F.3d 697, 708 (8th Cir. 2014) (internal quotation omitted). "Without one or the other, qualified immunity applies—regardless of whether there is a factual dispute about what occurred—because the defendant did not have 'fair and clear warning' that his conduct was unlawful." *Id.* (citing *United States v. Lanier,* 520 U.S. 259, 271 (1997)). Qualified immunity applies unless the rule is "beyond debate." *Id.* (citing *Stanton v. Sims,* 134 S.Ct. 3, 8 (2013)).

Viewing the facts in the light most favorable to Brown, the Court will assume that Engles unholstered his taser and aimed it at Brown for no legitimate purpose. Even so, existing law within the Eighth Circuit did not put Engles on notice that the mere drawing and pointing of the taser constituted excessive force. No constitutional violation was clearly established in this jurisdiction, as the most analogous case in this Circuit, *Policky v. City*

of *Seward, Nebraska*, found that pointing a loaded gun did not constitute excessive force. *Parker* and other district court cases with similar holdings are not binding on this Court as they arise outside of this jurisdiction, and consequently, do not put officers within this jurisdiction on notice that their actions could be unlawful. Therefore, Engles is entitled to qualified immunity.

For the foregoing reasons, Brown's second objection regarding excessive force with the taser is without merit and will be overruled.

### III. CONCLUSION

The Court, being well and sufficiently advised, finds that the R & R (Doc. 56) should be and hereby is ADOPTED.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. 32) is **GRANTED IN PART AND DENIED IN PART**. Defendants Motion for Partial Summary Judgment is **GRANTED** in respect to the claim that Engles used excessive force when drawing and pointing the taser at Brown, the claim that BCDC personnel used their tasers and/or pepper spray without cause in order to intimidate inmates, and all claims asserted against Sheriff Mike Moore. The Motion is **DENIED** as to the claim that Engles and Day retaliated against Brown.

**IT IS SO ORDERED** this 8th day of September, 2014.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE